UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN LEE HORN, III,

             Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

             Defendants.

_____/

Civil Action No. 22-11844

Judith E. Levy
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
MESSNER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21)**

On August 10, 2022, *pro se* plaintiff Stephen Lee Horn, III ("Horn"), a then-incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983 against seven defendants: Heidi Washington; the Michigan Department of Corrections ("MDOC"); the City of Jackson; Noah Nagy; MDOC Corrections Officer Chester Messner ("Messner"); and John and Jane Doe. (ECF No. 1). On October 13, 2022, the Honorable Bernard A. Friedman issued an Opinion and Order Partially Dismissing Horn's Complaint pursuant to 28 U.S.C. § 1915(e). (ECF No. 7). After that ruling, Horn's sole claim remaining claim in this case is that Messner violated the Equal Protection Clause when he issued a misconduct ticket to Horn, who is African-American, but did not issue tickets to similarly situated white prisoners for the same conduct. (ECF No. 7). After the case was re-assigned to the Honorable Judith E. Levy, an Order of Reference was entered on April 17, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 14).

On July 6, 2023, Messner filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 21). Horn's response to this motion was docketed on July 28, 2023[1] (ECF No. 25), and Messner filed a reply brief on August 21, 2023 (ECF No. 26).[2]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Messner's Motion for Summary Judgment **(ECF No. 21)** be **GRANTED**.

## II.   REPORT

### A.   Background

Horn is a State of Michigan probationer who was previously confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan ("JCF"). In his complaint, Horn alleges that, on March 13, 2022, he re-injured a finger that he had previously injured while

---

[1] On July 24, 2023, Horn filed a Motion for Extension of Time, in which he requested an unspecified extension of time within which to respond to Messner's dispositive motion. (ECF No. 23). This motion was unopposed. On today's date, the Court entered an order granting Horn's motion. (ECF No. 30). Thus, the Court will treat Horn's response as timely filed.

[2] On August 22, 2023, Horn filed his "1st Motion to Supplement/for Exhibits." (ECF No. 27). Horn ask the Court to admit into the record a copy of what he claims is the MDOC's "Mission and Vision Statements," apparently to identify internal protocols defendant Messner allegedly violated. (*Id.*, PageID.231). The document is not particularly relevant to the issues before the Court as violations of a prison policy do not give rise to § 1983 liability. *Ansari v. Jimenez*, No. 2:20-CV-10719, 2023 WL 4092249, at *4 (E.D. Mich. June 20, 2023). However, because Horn is proceeding *pro se*, and because the motion is unopposed, the Court entered an order on today's date granting Horn's motion. (ECF No. 30). Thus, the Court will consider the document.

working at his prison job. (ECF No. 1, PageID.7). He showed his finger to the kitchen boss and Messner, both of whom agreed it would be best to "lay [him] in" and send him to health care. (*Id.*). Horn alleges that, the next day, his unit officer told him he could not go to work because of his injured finger and stated, "Defendant [Messner] is not going to write you a ticket" for being absent from work. (*Id.*). As instructed, Horn did not go to work, but Messner issued him a Class II "out of place" misconduct ticket anyway. (*Id.*; ECF No. 21-4, PageID.131).

On March 15, 2022, Horn filed a "Step I" Grievance JCF-22-03-0516-27a ("Grievance 0516") challenging the issuance of the misconduct ticket. (ECF No. 21-3, PageID.125). In addition to asserting that Messner issued the ticket out of a racial animus ("can't be around minorities," "did not write [tickets] to white inmates"), Horn asserted his actual innocence to the "out of place" charge, claiming that no ticket should have been issued because he "could not make it to work because of" "getting hurt at food service" and that he was "waiting to see a doctor." (*Id.*). Grievance 0516 was rejected, with Horn being advised that he would "have an opportunity to present a defense [to the ticket] at [a] hearing," and that pursuant to MDOC policy, "issues directly related to the hearing process," including sufficiency of the evidence against him, were required to be raised at the hearing and could not be the subject of a grievance. (*Id.*, PageID.126). Horn appealed the rejection at Steps II and III of the MDOC's three-step grievance process, but the rejection was upheld each time. (*Id.*, PageID.122-123). Horn's Step III submission was on April 14, 2022, and the final rejection was dated April 26, 2022. (*Id.*, PageID.122).

On March 20, 2022, in the midst of Horn pursuing Grievance 0516, his Class II "out

3

of place" misconduct hearing took place. (ECF No. 21-4, PageID.130). Horn pleaded "not guilty," and the record of the hearing indicates that Horn did not argue that Messner's issuance of the misconduct ticket was based on his race. (*Id.*). Horn was found guilty and was sentenced to five days in "top-lock." (*Id.*). Horn did not appeal the guilty finding. (*Id.*, PageID.128).

As noted above, the only remaining claim in this case is Horn's Fourteenth Amendment Equal Protection claim against defendant Messner. Specifically, Horn claims that two other white prisoners missed work at the same time he did, for no justifiable reason, but that Messner did not issue them misconduct tickets. (ECF No. 1, PageID.7). Messner now moves for summary judgment on Horn's Equal Protection claim, arguing that Horn failed to properly exhaust his administrative remedies. (ECF No. 21). For the reasons set forth below, the Court agrees.

**B.** **Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

4

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.     Analysis

#### 1.     The PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion

requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524. Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules."). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

### 2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 21-2). A state prisoner must first complete the process outlined in the Policy – including, where applicable, pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved within two days after becoming aware of the grievable issue, he has five

7

business days to file a Step I grievance. (*Id*. at ¶ Q). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy. (*Id.* at ¶ Y). If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.*). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II grievance coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ DD). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy; if so, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.* at ¶ EE). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

However, the Policy provides that certain types of claims must be exhausted through means other than this three-step grievance process. (*Id.*, at ¶ J). For example, the Policy provides that challenges to "a decision made in a Class II or Class III misconduct hearing, including . . . issues directly related to the hearing process (e.g., sufficiency of the witness statements . . .)" are not grievable, and that to be properly exhausted, any challenge to such matters must be raised at the hearing and appealed through the "appeal process [] pursuant to PD 03.03.105 'Prisoner Discipline.'" (*Id.*, ¶ J(11)).

        3.     *Horn Failed to Properly Exhaust His Equal Protection Claim*

In his motion, Messner argues that Horn did not properly exhaust his Equal Protection claim because, while Horn filed and pursued Grievance 0516 related to that claim, the Policy and relevant case law required him to instead exhaust the claim through the hearing process. (ECF No. 21, PageID.89-98). More specifically, relying on ¶ J(11) of the Policy, Messner argues that "[t]o exhaust claims related to misconduct tickets or the misconduct hearing process, a prisoner needs to raise such claims during the hearing and the appeal." (*Id.*, PageID.95).

Messner relies principally on the Sixth Circuit case of *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). In *Siggers*, the plaintiff inmate had claimed that a prison official issued him a false misconduct ticket as part of a "conspiracy to deprive [him] of [his] civil rights." *Siggers*, 652 F.3d at 690. Siggers attempted to exhaust that claim through the MDOC's three-step process, but claimed he was unable to fully do so because prison officers refused to give him a Step II form. The Sixth Circuit rejected Siggers' argument, and held that the grievance process was "irrelevant" to the exhaustion question because Siggers' "grievance relate[d] to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing." *Siggers*, 652 F.3d at 694. *See also Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) ("*Siggers v. Campbell* established that a prisoner must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing."); *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *3-4 (E.D. Mich. Mar. 9, 2022) ("Allegations that the misconduct ticket was issued in

9

retaliation against the prisoner must be raised at the misconduct hearing. . . . If the inmate does not say at the hearing that the issuance of the ticket was retaliatory, any avenue to challenge the misconduct ticket is foreclosed and the inmate has failed to exhaust administrative remedies. . . . if inmates are unhappy with the outcome of misconduct hearings, they need to appeal that decision or ask for a rehearing pursuant to P.D. 03.03.105 in order to satisfy the exhaustion requirement.") (citing *Siggers* 652 F.3d at 693).

Other recent cases have reached the same conclusion. For example, in *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017), the plaintiff inmate claimed he had been issued a misconduct ticket in retaliation for accusing a guard of abusing his authority. Harris-Bey did not raise the alleged retaliation at the hearing, was convicted, and did not appeal. Citing to *Siggers*, the Court held that because Harris-Bey "did not allege retaliation at his misconduct hearing and, additionally, [] did not appeal the finding of guilt following that hearing," he failed to exhaust his retaliation claim. *Harris-Bey*, 2017 WL 3124328, at *4. *See also Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *5 (E.D. Mich. Feb. 3, 2018) ("a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies").[3]

---

[3] The Court notes that in the unpublished Sixth Circuit case of *Reynolds-Bey v. Harris*, 428 Fed.Appx. 493, 501 (2011), the Sixth Circuit wrote, "[a]s distinct from the outcomes of misconduct *hearings,* the filing of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130. *Reynolds-Bey*, 428 Fed.Appx. at 501 (emphasis in original). However, unlike *Siggers*, *Reynolds-Bey* is unpublished, and thus not binding law. It is also factually distinguishable from Horn's case. Reynolds-Bey prevailed at his misconduct hearing and had other misconduct tickets dismissed without a hearing, and it thus would have made no sense to require him to pursue the

10

Applying these legal principles to the facts at hand, it is clear that Horn did not properly exhaust his Equal Protection claim against Messner. While Horn pursued Grievance 0516 related to that claim, the three-step grievance process is "irrelevant" because Horn was challenging the underlying facts regarding the misconduct ticket, and therefore, under the applicable Policy provision (¶ J(11)), was required to raise and exhaust the Equal Protection claim through the hearing process. *Siggers*, 652 F.3d at 694. *See also Harris-Bey*, 2017 WL 3124328, at *4; *Odom*, 2022 WL 4115425, at *3. However, Horn does not contest the hearing report which shows that he did not allege during the hearing that Messner's issuance of the ticket in question was motivated by race. (ECF No. 21-4, PageID.130-31). Nor does Horn contest JCF Litigation Coordinator Kimberly Napier's sworn averment that "Horn did not appeal this misconduct ticket" conviction. (*Id.*, PageID.128).

In his response to Messner's motion for summary judgment, Horn argues that because he filed Grievance 0516, alleging "US. 42 Hate Crime," and pursued that grievance through all three steps of the administrative grievance process, he properly exhausted his equal protection claim against Messner. (ECF No. 25, PageID.140, 148; *see*

---

alleged retaliation through the entire hearing appeals process in order to exhaust his claims. As discussed below, Horn, on the other hand, had a hearing on the misconduct ticket and was contesting the factual basis for its issuance, *i.e.*, that he was "out of place." As explained in the recent Western District of Michigan case of *Odom v. Hill*, No. 21-cv-403, 2022 WL 4115425, at *3 (W.D. Mich. Sept. 9, 2022), "[i]f a prisoner disputes the conduct the ticket alleges, it makes sense to require exhaustion during the hearing because the factual basis of the ticket is implicated. A retaliatory motive undermines the credibility of the officer's statement, which is usually the primary evidence in the case and is necessarily part of the hearing."

11

*also* ECF No. 21-2, PageID.125).[4]  More specifically, Horn repeatedly argues that his grievance paperwork made clear that he "was not fighting [the] ticket but only officer conduct and had to only follow administrative remedies/grievance process," and that he therefore "never had to appeal [the] misconduct …." (ECF No. 25, PageID.148, 168; *see also id.*, PageID.150-51, 157-58, 201-02, 205, 222).  Horn's arguments lack merit.

Horn's repeated characterization of his challenge as being to the "hate crime itself" as opposed to "the ticket" misses the mark, as Horn has consistently disputed the factual basis of the misconduct ticket.  In his original grievance paperwork, Horn indicated that he was challenging Messner's assertion that he was "out of place," explaining that he "could not make it to work because" he was "waiting to see [the] doctor . . ." (ECF No. 21-3, PageID.125).  Horn also chose to plead "not guilty" to the misconduct ticket, thereby challenging it.  (ECF No. 21-4).  Finally, even in his summary judgment response brief, Horn reiterates his challenge to the factual basis on which the ticket was issued, asserting, "Officer [Messner] wrote plaintiff a major misconduct out of place [ticket] for not reporting to work which plaintiff could not because doctor did not clear him yet." (ECF No. 25, PageID.157).  As the case law discussed above makes clear, where an inmate challenges the factual basis of a misconduct ticket, he must raise any claim that the ticket was issued for an improper purpose – such as to perpetuate a "conspiracy" or "in retaliation against the prisoner" – at the hearing on the ticket, and then exhaust that claim through the hearing

---

[4] Horn also argues that his "failure to name the [individual] or [all] the individuals involved in the incident is not necessarily fatal to a prisoner's suit." (*Id.*, PageID.147).  But Messner is not moving for summary judgment on that basis, and the Court need not discuss it further.

appeals process. *See Siggers* 652 F.3d at 693; *Ayotte*, 2019 WL 2219739, at \*5; *Parker*, 2022 WL 722192, at \*3-4; *Miller*, 2018 WL 1354473, at \*5; *Odom*, 2022 WL 4115425, at \*3. Horn's claim that the ticket in question was issued out of racial animus is no different.

The only way Horn could avoid this requirement is if no hearing had been held on the misconduct ticket, in which case Horn would have been *required* to exhaust his Equal Protection claim through the three-step grievance process. *See Parker*, 2022 WL 722192, at \*3 (fact that no hearing was held on a misconduct ticket "does not relieve the prisoner of his obligation to exhaust administrative remedies [through the three-step grievance process] before filing suit."). But Horn's argument fails on this point because, again, he did have a hearing at which he challenged the ticket's factual basis by pleading "not guilty." (ECF No. 21-4).

In sum, under the case law discussed above, *see supra* at 9-11, because Horn elected to challenge the misconduct ticket via a hearing, he was required to exhaust his claim that Messner issued the ticket based on racial animus by raising that claim at the hearing and appealing any denial through the available hearing appeals process. The undisputed evidence before the Court is that Horn did not raise the issue at his misconduct ticket hearing, and did not appeal his conviction. Thus, no genuine issue of material fact exists as to whether Horn properly exhausted his Equal Protection claim, and summary judgment in Messner's favor is appropriate.

### III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Messner's Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 21)** be **GRANTED**.

Dated: October 3, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 3, 2023.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager